United States District Court
Eastern District of New York

-----------------------------------X

United States of America,

- against -

Emmanuel Clase de la Cruz, et al.,

*Defendants*.

-----------------------------------X

**Memorandum and Order**

No. 25-CR-346 (KAM)

**Kiyo A. Matsumoto, United States District Judge:**

On November 5, 2025, Defendants Emmanuel Clase de la Cruz ("Mr. Clase") and Luis Leandro Ortiz Ribera ("Mr. Ortiz") were charged with wire fraud conspiracy in violation of 18 U.S.C. §§ 1343, 1349 (Count One), honest services wire fraud conspiracy in violation of 18 U.S.C. §§ 1343, 1346, 1349 (Count Two), conspiracy to influence sporting contests by bribery in violation of 18 U.S.C. § 224 (Count Three), and money laundering conspiracy in violation of 18 U.S.C. § 1956 (Count Four). (*See* ECF No. 1.) On February 12, 2026, the grand jury returned a Superseding Indictment adding defendants Robinson Vasquez Germosen ("Mr. Vasquez") and Defendant-4, whose identity remains sealed. (*See* ECF No. 80, "Superseding Indictment.") The Superseding Indictment charged Mr. Vasquez with Count One and with making materially false statements to law enforcement agents in violation of 18 U.S.C. § 1001(a)(2) (Count Five). (*See id.* ¶¶ 68-69.) The Superseding

Indictment brought no new charges against Messrs. Clase and Ortiz.

The Superseding Indictment charges that Messrs. Clase and Ortiz -- two Major League Baseball ("MLB") pitchers for the Cleveland Guardians -- conspired with others, including Mr. Vasquez and Defendant-4, to rig pitches and profit from fraudulent wagers on sports betting platforms using that non-public information, and make profits. (*See id.* ¶ 1.) Currently pending before the Court are three motions to dismiss Count One by Messrs. Clase, Ortiz, and Vasquez (together, "Defendants") (ECF Nos. 142, 144, 148). Briefing ensued and concluded on June 23, 2026.

For the reasons that follow, the Court respectfully **DENIES** Defendants' motions to dismiss.

## Background

The Court assumes familiarity with the facts and background of the case, as set forth in the Court's decision published February 2, 2026. (*See* ECF No. 75.) In deciding the motion to dismiss, "the Court 'accept[s] as true all of the allegations of the indictment.'" *United States v. Skyfield*, 2023 WL 8879291, at *1 (S.D.N.Y. Dec. 22, 2023) (quoting *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985)).

In approximately May 2023, Mr. Clase allegedly agreed with Mr. Vasquez, Defendant-4, an individual referred to as Bettor-1, as well as other bettors, to throw specific pitches in MLB games such that Mr. Clase and the Bettors would profit from fraudulent

wagers made based on that non-public information. (Superseding Indictment ¶ 18.) Usually, Mr. Clase conspired with the Bettors to "throw balls (instead of strikes) and slower 'slider' pitches," "often on the first pitches of an at-bat when [Mr. Clase] was brought into the game as a relief pitcher." (*Id.* ¶ 23.) The Bettors placed their fraudulent wagers on three Betting Platforms, which were all sportsbooks that operated both online and in person. (*See, e.g.*, *id.*, ¶¶ 7-12.) In order to place wagers on the three Betting Platforms, the Bettors were required to agree to the Betting Platforms' terms of use, which prohibited wagering in connection with sports contests if users had access to pre-release, non-public, and confidential information, and wagering as a proxy for any individual other than the account holder. (*See id.* ¶ 15.) Mr. Clase sometimes received payments from the Bettors as part of the conspiracy. (*See, e.g.*, *id.* ¶¶ 36, 39.)

In or around June 2025, when Mr. Ortiz joined the criminal conspiracy, he, like Mr. Clase, agreed to throw balls on certain pitches in exchange for bribes or kickbacks. (*See id.* ¶¶ 20, 48.) The Superseding Indictment charges that Mr. Ortiz threw two rigged pitches in the Guardians' June 15, 2025 and June 27, 2025 games. (*Id.* ¶¶ 49, 55).

In addition to describing the specific pitches that were allegedly rigged in favor of the Bettors, the Superseding Indictment describes wire communications between the co-

conspirators to coordinate the placement of fraudulent wagers and the transfer of funds after the proceeds of such wagers were paid out by the Betting Platforms. (*See, e.g.*, *id.* ¶¶ 50, 52-54, 56, 58.) The communications were made using code words like "rooster." (*See, e.g.*, *id.* ¶¶ 26, 34, 38.) Certain Bettors are alleged to have visited Mr. Clase's residence before and after games where pitches had been rigged and attended games using tickets reserved for them by Mr. Clase, including games where pitches had been rigged. (*Id.* ¶¶ 40, 43.) In all, the Bettors won at least $450,000 from the Betting Platforms on pitches thrown by Messrs. Clase and Ortiz. (*Id.* ¶ 22.)

Defendants make three arguments in favor of dismissal of Count One (conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 1349). First, Defendants argue that Count One fails to state an offense because the Government does not allege any material misstatement the Bettors made to the victim Betting Platforms when the Bettors placed their allegedly fraudulent bets, nor any material misstatement made by Messrs. Clase or Ortiz in furtherance of the scheme. (*See* ECF No. 142 at 5-6.) According to Defendants, an essential element of wire fraud is "a scheme to defraud," which they argue requires the Government to "prove the *materiality* of a defendant's false statements or misrepresentations." (*Id.* at 4 (citing *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019)). Defendants argue that, because the Betting Platforms did not allow

the Bettors to make *any* representation when they placed the bets, the Bettors were "incapable of making a material misstatement" or had no duty to disclose such that any "material omission" could provide the basis of a scheme to defraud. (*Id.* at 4-6.) Second, Messrs. Clase and Ortiz argue that the Superseding Indictment "constitutes an impermissible federalization of alleged violations of state law" because it "attempts to transform alleged violations of state-regulated sportsbooks rules into a federal wire fraud conspiracy," thereby "upsetting the 'coherent federal policy' governing sports wagering." (*Id.* at 7 (quoting *Murphy v. Nat'l Collegiate Athl. Ass'n*, 584 U.S. 453, 484 (2018)).) Third, Mr. Vasquez argues that the Government's theory of fraud was rejected by the Supreme Court in *United States v. Ciminelli*, 598 U.S. 306, 309 (2023), in which it found that the wire fraud statute did not criminalize schemes based exclusively on depriving the victim of the economic information necessary to make discretionary economic decisions, as opposed to tangible property. (ECF No. 148 at 5-6.) For the reasons set forth below, the Court finds each of these arguments unavailing.

## **Discussion**

The federal wire fraud statute criminalizes "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . by means of wire, radio, or television communication in

interstate or foreign commerce." 18 U.S.C. § 1343. Defendants have been charged with violating 18 U.S.C. § 1349, which proscribes attempts or conspiracies to commit wire fraud.

In the Second Circuit, wire fraud requires: "(i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate . . . wires." *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000). To establish wire fraud conspiracy, the Government must prove that the defendant (i) "the defendant agreed with another to commit wire fraud," and (ii) "knowingly engaged in the conspiracy with the intent to commit that offense." *United States v. DiMassa*, 117 F.4th 477, 487 (2d Cir. 2024). "The gravamen of [wire fraud] is the scheme to defraud," *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 657 (2d Cir. 2016), which "has been described as a plan to deprive a person of something of value by trick, deceit, chicane, or overreaching," *Autuori*, 212 F.3d at 115 (internal quotations omitted). The scheme to defraud element must be supported by "proof that defendants possessed a fraudulent intent," meaning defendants "must either intend to harm their victim or contemplate that their victim may be harmed." *United States v. Gatto*, 986 F.3d 104, 113 (2d Cir. 2021). Recently, the Supreme Court clarified that the object of the fraudulent scheme must have been to deprive the victim of money or traditional notions of property, rather than of intangible interests like the "right to valuable

economic information." *Ciminelli v. United States*, 598 U.S. 306, 308-09, 316 (2023).

On a motion to dismiss, an "indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). An indictment is to be "read . . . 'to include facts which are necessarily implied by the specific allegations therein," *United States v. Faison*, 393 F. App'x 754, 757 (2d Cir. 2010) (summary order) (quoting *United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002)), and it need not do more than "track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime," *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotations omitted). "It is not the function of an indictment to inform the defendant of the evidence or the facts which the Government will use to prove its case." *United States v. Phillip*, 690 F. Supp. 3d 268, 277 (S.D.N.Y. 2023). "An indictment 'need not be perfect, and common sense and reason are more important than technicalities.'" *Stringer*, 730 F.3d at 124 (quoting *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001)).

Pursuant to these principles, "[a] defendant faces a high standard in seeking to dismiss an indictment." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014). "Dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *De La Pava*, 268 F.3d at 165 (internal quotations omitted); *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979) (dismissal of indictment should be "reserved for the truly extreme cases"). However, "[a] charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged." *United States v. Burns*, 2023 WL 5019522, at *2 (E.D.N.Y. Aug. 7, 2023) (citation omitted).

Defendants argue that the Superseding Indictment does not allege any "material misstatement or omission," so it fails to state an offense as to Count One. (*See* ECF No. 142 at 4-7.) This argument is predicated upon a false premise. Wire fraud conspiracy does not require a material misstatement or omission but rather only a "scheme to defraud" the victim of money or property. *See Auotori*, 212 F.3d at 115; *Ciminelli*, 598 U.S. at 308. By its plain language, the statute covers schemes to defraud where the object is to obtain "money or property" "by means of false or fraudulent pretenses," or "representations," and not only misstatements and omissions. 18 U.S.C. § 1343. The Second Circuit also recently observed that while "[s]chemes to defraud are often characterized

by false statements," "the government need not prove an actual false statement so long as it proves a scheme to engage in some form of deception." *United States v. Connolly*, 24 F.4th 821, 834 (2d Cir. 2022).

Such deception has been sufficiently alleged here, so the Superseding Indictment more than adequately states an offense for wire fraud conspiracy. *Stringer*, 730 F.3d at 124. Based on the facts as alleged, the Bettors may not have had the opportunity to misstate to the Betting Platforms that their bets were genuine, but their scheme did include, at a minimum, misrepresentation to the Betting Platforms that their bets were not based on non-public and confidential information.[1] The Court declines to opine further as to the sufficiency of the factual allegations at this stage. *United States v. Wedd*, 993 F.3d 104, 121 (2d Cir. 2021) ("At the indictment stage, we do not evaluate the adequacy of the facts to satisfy the elements of the charged offense. That is something we do after trial."). Further, because the Superseding Indictment sufficiently alleges the elements to wire fraud conspiracy, these allegations constitute more than mere violations of the Betting

[1] Indeed, there is no serious dispute that a *bid* rigging conspiracy can constitute a 18 U.S.C. § 1343 offense, even if there was no documentation attached to a fraudulent bid that wrongfully misstates the bid as genuine, because the very act of making a bid carries with it the representation that it is a legitimate offer in a legitimate contest. *See Sterling Interiors Grp., Inc. v. Haworth, Inc.*, 1996 WL 426379, at *7 (S.D.N.Y. July 30, 1996) ("A rigged bid is, at some level, a misrepresentation: it is presented to the customer as though it were competitive when in fact it is not. The customer relies on its authenticity when he decides to purchase. And it is portrayed as competitive for the purpose of inducing that reliance.") The same principles apply here.

Platforms' "house rules." (*See* ECF No. 142 at 6); *United States v. Gatto*, 986 F.3d 104, 129 (2d Cir. 2021) (rejecting defendants' argument that they "[b]roke the NCAA rules," but "did not act criminally"); *Richardson v. United States*, 526 U.S. 813, 817 (1999) ("Federal crimes are made up of factual elements, who are ordinarily listed in the statute that defines the crime.").

Mr. Clase's argument that the Superseding Indictment "does not allege that [he] placed any wagers himself" and that it "fails to allege that Mr. Clase personally made any material misstatements or omissions" is also misplaced. (*See* ECF No. 142 at 4, 6.) Setting aside that no material misstatement or omission is necessary to state a wire fraud conspiracy offense in the first place, Mr. Clase is charged with wire fraud conspiracy, which does not require Mr. Clase to have personally engaged in deception but rather that he agreed with others to engage in a scheme to defraud. *See United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) ("Conspiracy to commit wire fraud requires merely the agreement between defendants to engage in the foregoing and an overt act by *one of the conspirators* in furtherance of the conspiracy." (emphasis added)). Nevertheless, as the Government points out, the Superseding Indictment alleges deceptive acts taken by Mr. Clase in furtherance of the conspiracy, including throwing allegedly rigged pitches to obtain money from the Betting Platforms, so Mr. Clase's participation is adequately alleged.

(*See* ECF No. 167 at 19 n.6.)

Defendants' other arguments do not alter the Court's conclusion. The Court disagrees with Mr. Vasquez that the Superseding Indictment "alleges a scheme aimed at depriving the Betting Companies of economically valuable information," (ECF No. 148 at 16), in apparent contradiction of *Ciminelli v. United States*, 598 U.S. 306, 309 (2023). There, the Supreme Court, concerned that the Federal Government was using the federal fraud statutes to encroach upon "state and local policymaking" by broadly criminalizing schemes to deprive victims of "intangible interests" like the "right to control the use of one's assets," held that such statutes instead "criminalize only schemes to deprive people of traditional property interests." *Id.* at 311, 312, 316 (internal quotations omitted). Count One of the Superseding Indictment does not run afoul of *Ciminelli* because it alleges a "scheme . . . to defraud" the Betting Platforms of "money and property." (Superseding Indictment, ¶ 61.) For now, nothing more is needed. *Alfonso*, 143 F.3d at 776 (2d Cir. 1998) (indictment need only "track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime"). And, because the Superseding Indictment alleges a wire fraud to deprive the victims of money, the federalism concerns permeating now-invalidated fraud schemes are also not pertinent here. *United States v. Chastain*, 145 F.4th 282, 292 (2d Cir. 2025) (*Ciminelli*

clarified that the fraud statutes "do not vest a general power in the Federal Government to enforce (its view of) integrity" and "*instead* protect property rights only" (emphasis added) (internal quotations omitted)). Accordingly, neither of Defendants' arguments regarding *Ciminelli* changes the straightforward conclusion that Count One has been sufficiently alleged.

In light of the foregoing, the Court respectfully **DENIES** Defendants' motion to dismiss Count One.

**So ordered.**

Dated: September 8, 2026
Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York